# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

KIMBERLY L. IWAN,

   Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

No. 17-CV-97-LRR

**ORDER**

_____

*I. INTRODUCTION………………………………………………………………1*
*II. RELEVANT PROCEDURAL HISTORY……………………………………1*
*III. STANDARD OF REVIEW……………………………………………………2*
  *A. Review of Final Decision………………………………………2*
  *B. Review of Report and Recommendation………………………4*
*IV. OBJECTIONS……………………………………………………………………6*
  *A. Listing 14.09D……………………………………………………6*
  *B. Credibility Determination………………………………………10*
  *C. Dr. Mathew's Opinions…………………………………………14*
*V. SUPPLEMENTAL BRIEF……………………………………………………17*
*VI. CONCLUSION…………………………………………………………………19*

## I. INTRODUCTION

The matter before the court is Plaintiff Kimberly L. Iwan's Objections (docket no. 25) to United States Magistrate Judge Kelly K.E. Mahoney's Report and Recommendation (docket no. 17), which recommends that the court affirm Defendant Commissioner of Social Security's ("Commissioner") final decision to deny disability benefits to Iwan.

## II. RELEVANT PROCEDURAL HISTORY

On September 20, 2017, Iwan filed a Complaint (docket no. 3), seeking judicial

review of the Commissioner's final decision denying Iwan's applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. On November 22, 2017, the Commissioner filed an Answer (docket no. 8). On February 25, 2018, Iwan filed the Plaintiff's Brief (docket no. 13). On March 22, 2018, the Commissioner filed the Defendant's Brief (docket no. 14). On April 4, 2018, Iwan filed a Reply Brief (docket no. 15). On April 5, 2018, the matter was referred to Judge Mahoney for issuance of a report and recommendation. On July 12, 2018, Judge Mahoney issued the Report and Recommendation. On July 19, 2018, Iwan filed a Supplemental Brief (docket no. 22). On July 26, 2018, Iwan filed the Objections. On August 2, 2018, the Commissioner filed a Response to the Objections (docket no. 28). On August 23, 2018, the Commissioner filed a Response to the Supplemental Brief (docket no. 29). On August 30, 2018, Iwan filed a Reply Brief (docket no. 30). The matter is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

### A. *Review of Final Decision*

The Commissioner's final determination not to award disability insurance benefits is subject to judicial review. *See* 42 U.S.C. § 405(g). The court has the power to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id*. The Commissioner's factual findings shall be conclusive "if supported by substantial evidence." *Id*. The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). *See Id*. § 1383(c)(3). "The court 'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support

a decision." *Fentress v. Berryhill*, 854 F.3d 1016, 1019-20 (8th Cir. 2017) (quoting *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the [administrative law judge ("ALJ")], but [it] do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress*, 854 F.3d at 1020; *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (providing that review of the Commissioner's decision "extends beyond examining the record to find substantial evidence in support of the [Commissioner's] decision" and noting that the court must also "consider evidence in the record that fairly detracts from that decision"). The Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)). The court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "An ALJ's decision is not outside the zone of choice simply because [the court] might have reached a different conclusion had [the court] been the initial finder of fact." *Id*. (quoting *Bradley*, 528 F.3d at 1115). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a

different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

### B. *Review of Report and Recommendation*

The standard of review to be applied by the court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (providing that, when a party properly objects to a report and recommendation on a dispositive motion, a district court must review de novo the magistrate judge's recommendation). The Eighth Circuit has repeatedly held that it is reversible error for a district court to fail to conduct a de novo review of a magistrate judge's report and recommendation when such review is required. *See, e.g.*, *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). The statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). When a party fails to object to any portion of a magistrate judge's report and recommendation, he or she waives the right to de novo review. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994). The United States Supreme Court has stated that "[t]here is no indication that Congress, in enacting § 636(b)(1)[ ], intended to require a district judge to review a magistrate's report to which no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 152 (1985). However, "while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under de novo or any other

4

standard." *Id*. at 154.

The Eighth Circuit has suggested that in order to trigger de novo review, objections to a magistrate judge's conclusions must be specific. *See Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989); *see also Belk*, 15 F.3d at 815 (noting that some circuits do not apply de novo review when a party makes only general and conclusory objections to a magistrate judge's report and recommendation and finding that *Branch* indicates the Eighth Circuit's "approval of such an exception"); *Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990) (reminding the parties that "objections must be . . . specific to trigger de novo review by the [d]istrict [c]ourt of any portion of the magistrate's report and recommendation"). The Sixth Circuit Court of Appeals has explained the approach as follows:

> A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error. We should not permit appellants to do the same to the district court reviewing the magistrate's report.

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see also Goney v. Clark*, 749 F.2d 5, 6 n.1 (3d Cir. 1984) (finding that "plaintiff's objections lacked the specificity necessary to trigger de novo review"); *Whited v. Colvin*, No. C 13-4039-MWB, 2014 WL 1571321, at *2-3 (N.D. Iowa Apr. 18, 2014) (concluding that, because the plaintiff "offer[ed] nothing more than a conclusory objection to . . . [the report and recommendation] . . . [the plaintiff's] objection [should be treated] as if he had not

5

objected at all"); *Banta Corp. v. Hunter Publ'g Ltd. P'ship*, 915 F. Supp. 80, 81 (E.D. Wis. 1995) ("De novo review of a magistrate judge's recommendation is required only for those portions of the recommendation for which particularized objections, accompanied by legal authority and argument in support of the objections, are made.").

## IV. OBJECTIONS

In the Objections, Iwan argues that: (1) Judge Mahoney erred in finding that the ALJ's failure to address Listing 14.09D is harmless error; (2) Judge Mahoney generally erred in concluding that the ALJ's credibility determination is supported by substantial evidence; and (3) Judge Mahoney erred in finding that the ALJ properly weighed Dr. Mathew's opinions. *See* Objections 2-5. After conducting a de novo review of the objected-to portions of the Report and Recommendation and the Administrative Record ("AR") (docket nos. 9-1 through 9-8), the court shall overrule the Objections.

### A. *Listing 14.09D*

Here, Iwan offers a purely conclusory argument stating only that she "continues to rely on her principal [brief] and reply brief, and objects to the [Report and Recommendation] generally in its treatment of this issue." Objections at 2. The court presumes that Iwan objects to Judge Mahoney's conclusion that "any error by the ALJ in failing to address Listing 14.09D was harmless." Report and Recommendation at 9. Initially, the court notes that Iwan's argument fails to comply with the Local Rules, which require "[a] party who objects to . . . a magistrate judge's report and recommendation" to "file *specific*, written objections to the . . . report and recommendation." LR 72A (emphasis added). Moreover, Iwan's failure to object to Judge Mahoney's findings on this point with any specificity means that Iwan has waived her right to de novo review of this issue. *See Thompson*, 897 F.2d at 357-58 (providing that "objections must be . . . specific to trigger de novo review by the [d]istrict [c]ourt of any portion of the magistrate's report and recommendation"). Nevertheless, out of an abundance of caution, and in this instance,

6

the court shall review the ALJ's consideration of Listing 14.09D at step three of the sequential evaluation de novo.[1] *See Thomas*, 474 U.S. at 154 (providing that, while de novo review is not required when a party fails to object to a magistrate judge's report and recommendation, the court may apply "de novo or any other standard [of review]").

In the Plaintiff's Brief, Iwan argues that "[g]enerally, an ALJ should provide a thorough and reviewable discussion as to whether a claimant's fibromyalgia, 'alone or in combination with her other impairments, meets or equals a Listed impairment at Step Three of the analysis.'" Plaintiff's Brief at 4 (quoting *Miller v. Colvin*, 114 F. Supp. 3d 741, 775 (D.S.D. 2015)). Iwan maintains that, "[i]n most cases where fibromyalgia is the principal limiting impairment, Listing 14.09D, the [l]isting for inflammatory arthritis, is the appropriate listing to evaluate when a claimant's primary claim of disability is due to fibromyalgia." *Id*. Iwan contends that the ALJ erred because he failed "to even address medical equivalence to Listing 14.09D." *Id*. at 5.

The Eighth Circuit has explained that:

> To qualify for disability benefits at step three, a claimant must establish that his [or her] impairment meets or equals a listing. An impairment meets a listing only if it "meet[s] *all* of the specified medical criteria." "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." To prove that an impairment or combination of impairments equals a listing, a claimant "must present medical findings equal in severity to *all* the criteria for the one most

---

[1] Pursuant to the federal regulations, an ALJ must complete the five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988-89 (8th Cir. 2014). The five steps an ALJ must consider are: "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work." *Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014).

similar listed impairment."

*KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016) (second alteration in original) (citation omitted) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990)).

In this case, the ALJ determined at step three that:

> [Iwan's] impairments were evaluated singly and in combination under section 1.00ff of the Listings. The medical evidence of record does not contain findings supportive of listing level severity and state agency reviewing physicians concluded that [Iwan's] impairments did not meet or equal any section in the Listing of Impairments.

AR at 86.

Iwan's assertion that the ALJ erred by failing to address medical equivalence to Listing 14.09D is based on her reading of Social Security Ruling ("SSR") 12-2p, which states:

> [Fibromyalgia] cannot meet a listing in [A]ppendix 1 because [fibromyalgia] is not a listed impairment. At step [three], therefore, [the Social Security Administration] determine[s] whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012). Iwan argues that SSR 12-2p requires an ALJ to evaluate whether fibromyalgia is medically equal to Listing 14.09D. Other courts, however, read SSR 12-2p differently. *Compare Schleuning v. Berryhill*, No. Civ. 16-5009-JLV, 2017 WL 1102607, at *3-4 (D.S.D. Mar. 23, 2017) (discussing SSR 12-2p and finding that an "ALJ must evaluate [fibromyalgia] under Listing 14.09D") with *Clevenger v. Colvin*, No. 2:16-cv-14, 2016 WL 8938380, at *6 (N.D. W. Va. Aug. 31, 2016) ("SSR 12-2p provides 14.09D merely as an example thus, the ALJ does not err per se by failing to analyze 14.09D."); *Landefeld v. Comm'r of Soc. Sec.*, No. 2:15-cv-880, 2016 WL 304499, at *2 (S.D. Ohio Jan. 26, 2016) ("SSR 12-2p does not mandate express

8

consideration of Listing 14.09D. . . .”); and *White v. Colvin*, No. 4:12-cv-11600, 2013 WL 5212629, at *22 (E.D. Mich. Sept. 16, 2013) ("SSR 12-2p does not require an ALJ to consider any specific listing, but simply requires him or her to consider a claimant's fibromyalgia against a relevant listing, citing Listing 14.09D as one such example."). The court is persuaded by the reading of SSR 12-2p in *Clevenger*, *Landefeld* and *White*. Therefore, the court finds that the ALJ did not err merely by not addressing Listing 14.09D in his decision.

Further, in order to meet medical equivalency for Listing 14.09D Iwan must prove:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R Pt. 404, Subpt. P, App. 1 at § 14.09D. Iwan offers no evidence that her diagnosis of fibromyalgia is medically equal to Listing 14.09D. *See McDade v. Astrue*, 720 F.3d 994, 1001 (8th Cir. 2013) ("The claimant bears the burden of demonstrating that his [or her] impairment matches all the specified criteria of a listing."); *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) ("The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing. To meet a listing, an impairment must meet all of the listing's specified criteria."). Therefore, even if the ALJ had erred in not addressing Listing 14.09D, the court finds that Iwan has failed to meet her burden of showing that her diagnosis of fibromyalgia meets or equals Listing 14.09D.

Moreover, the ALJ addressed Listing 1.00ff and determined that Iwan's impairments, including her fibromyalgia diagnosis, "did not meet or equal any section in the Listing of Impairments." AR at 86. Based on the court's review of the entire record,

the court finds that the ALJ's decision is supported by substantial evidence on the record as a whole. *See Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017) ("An ALJ's failure to address a specific listing or to elaborate on his [or her] conclusion that a claimant's impairments do not meet the listings is not reversible error if the record supports the conclusion."). Accordingly, the court shall overrule this objection.

### B. Credibility Determination

Iwan again offers a purely conclusory argument and states only that she "continues to rely on her principal brief, and objects to the [Report and Recommendation] generally in its treatment of this issue." Objections at 2. The court presumes that Iwan objects to Judge Mahoney's finding that "substantial evidence supports the ALJ's decision not to fully credit all of Iwan's subjective complaints." Report and Recommendation at 15. Iwan's argument fails to comply with the Local Rules, which require "[a] party who objects to . . . a magistrate judge's report and recommendation" to "file *specific*, written objections to the . . . report and recommendation." *Id*. (emphasis added). Moreover, Iwan's failure, again, to specify her objections to Judge Mahoney's findings regarding the ALJ's credibility determination means that Iwan has waived her right to de novo review of this issue. *See Thompson*, 897 F.2d at 357-58 (providing that "objections must be . . . specific to trigger de novo review by the [d]istrict [c]ourt of any portion of the magistrate's report and recommendation"). Nevertheless, out of an abundance of caution, and in this instance, the court shall review the ALJ's credibility determination de novo. *See Thomas*, 474 U.S. at 154 (providing that, while de novo review is not required when a party fails to object to a magistrate judge's report and recommendation, the court may apply "de novo or any other standard [of review]").

When assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)."

10

*Vance*, 860 F.3d at 1120. In *Polaski*, the Eighth Circuit stated that:

> [t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322. The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). If an ALJ discounts a claimant's subjective complaints, he or she is required to "make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the *Polaski* factors." *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (stating that an ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found'" (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003))). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility

determination."). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In this case, the ALJ determined that Iwan's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR at 90. The ALJ explained:

> Although [Iwan] described disabling symptoms as a result of the medical impairments, the record is not consistent with that conclusion. [Iwan] described activities of daily living that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. [Iwan] reported no problems with her personal care; she prepared her own meals on a daily basis; she performed housework and yard work such as cleaning, laundry, small household repairs, and mowing on a rider; she got outside every day and traveled via walking, driving, or riding in a car; she shopped in stores for groceries, personal care, and clothing; she spent time with others two to three times a week going to bars and hanging out as well as playing pool although she did not[e] that she was not able to dance much; she stated that she could lift up to twenty to thirty-five pounds; she had no problems paying attention; she followed instructions very well; she got along with authority figures very well; and she handled changes in routine very well.

*Id*. at 91. Further, the ALJ stated:

> As discussed above, despite the allegations of symptoms and limitations preventing all work, the record reflects that since her alleged onset date, [Iwan] went bowling and hung out at bars two to three times a week, playing pool. Although bowling/hanging out at bars/playing pool and a disability are not necessarily mutually exclusive, [Iwan's] ability to go bowling, hang out at bars, and play pool tends to suggest that

> the alleged symptoms and limitations may have been overstated.

*Id*.

The ALJ also thoroughly reviewed Iwan's medical history and pointed out inconsistencies between her allegations of disabling limitations and the relief treatment and medication provided for her. *See generally id*. at 87-90. The ALJ referenced the opinions of Dr. Tracey Larrison, D.O., a non-treating physician, who noted in July 2014, that Iwan had been diagnosed with fibromyalgia but her "[e]xams had been normal with tenderness to palpation over various tender points" and her exams indicated that her "[g]ait was steady." *Id*. at 87-88. Dr. Larrison opined that Iwan's "allegations in terms of extent of functional loss were not fully supported by objective findings." *Id*. at 88. The ALJ also referenced the opinions of Dr. Laura Griffith, D.O., a non-treating physician, who noted in October 2014, that Iwan "alleged constant pain that impacted her mobility as well as her function. However, the inconsistency was that the level of severity alleged was simply not supported by [Iwan's] current treatment history." *Id*. The ALJ further noted that, at Iwan's yearly physical in October 2014, Iwan "reported having no problems" and "[f]ollowing [the] examination, [she] was diagnosed as a healthy female." *Id*. The ALJ pointed out that in early 2015, Iwan's symptoms benefitted from aquatherapy. *Id*. at 89. The ALJ noted that, in May 2015, at a doctor's visit for medication refill to treat fibromyalgia and knee pain, Iwan "voiced no concerns" and her "medications were continued." *Id*. The ALJ further noted that in June 2015, Iwan underwent injections in her right and left knee. *Id*. The injections helped Iwan "feel like her pain and arthritis were improving." *Id*. After receiving the series of injections in both knees, Iwan stated that "she was doing very well," "her pain continued to improve," "she was having an easier time with mobility and [an] easier time going up and down stairs" and she had "decreased pain and improved mobility." *Id*. The ALJ pointed out that "August 2015 clinical notes indicated [Iwan] was independent in ambulation and all activities of daily

living" and "in September 2015, it was noted that [Iwan's] fibromyalgia was controlled." *Id*. Finally, the ALJ noted that in April 2016, after left knee injections, Iwan "was doing very well and had responded well to the first injection." *Id*. at 90.

It is clear from the ALJ's decision that he thoroughly considered and discussed Iwan's treatment history, medical history, functional restrictions, activities of daily living and use of medications in making his credibility determination. Thus, having reviewed the entire record, the court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Iwan's subjective allegations of disability were not credible. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (noting that an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints). Therefore, because the ALJ seriously considered, but for good reasons explicitly discredited, Iwan's subjective complaints, the court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court shall overrule this objection.

### *C. Dr. Mathew's Opinions*

Iwan objects to Judge Mahoney's finding that "[i]t is unclear from Dr. Mathew's treatment records, as well as other evidence in the record, how Dr. Mathew arrived at many of the limitations in his RFC opinion" and her conclusion that, "[t]herefore, the ALJ did not err in assigning little weight to the limitations contained on Dr. Mathew's [Medical Source Statement] form." Report and Recommendation at 20. Iwan argues that the ALJ's reasoning for discounting Dr. Mathew's opinions is flawed because "[t]he only reason the ALJ gave for rejecting Dr. Mathew's opinions was due to the opinions being provided in a checklist or checkbox format." Objections at 3. Iwan argues that Judge Mahoney's

"approach of providing missing good reasons for the weight afforded to Dr. Mathew's opinions was not appropriate." *Id*. at 5.

"The opinion of a treating physician is generally afforded 'controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Wildman*, 596 F.3d at 964). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *See Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008). When an ALJ discounts a treating physician's opinion, he or she "must 'give good reasons' for doing so." *Chesser*, 858 F.3d at 1164 (quoting *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012)). "Good reasons for assigning lesser weight to the opinion of a treating source exist where 'the treating physician's opinions are themselves inconsistent,' *Cruze* [*v. Chater*], 85 F.3d [1320,] 1325 [(8th Cir. 1996)], or where 'other medical assessments are supported by better or more thorough medical evidence,' *Prosch* [*v. Apfel*], 201 F.3d [1010,] 1012 [(8th Cir. 2000)]." *Id*.

In the decision, the ALJ addressed Dr. Mathew's opinions as follows:

> In January 2015, Stanley Matthew [sic], M.D., completed a form report on [Iwan's] behalf. Dr. Matthew [sic] opined [Iwan] was extremely limited. (Exhibits 5F, 8F). However, as the courts have long recognized, form reports in which the source's only obligation is to fill in a blank or check off a box are entitled to little weight in the adjudicative process. Accordingly, the undersigned assigns little weight to the form report completed by Dr. Matthew [sic].

AR at 88-89 (citations omitted). While the ALJ's decision focused on the checkbox form

of Dr. Mathew's Medical Source Statement, the ALJ also referenced Exhibit 8F. *See id*. at 88. Exhibit 8F contains treatment records from Dr. Mathew. *See Id*. at 475-493. The ALJ addressed these treatment records in his decision. *See generally id*. at 89-90. In discussing these records, the ALJ noted that, after treatment to her right knee, Iwan felt "like her pain and arthritis were improving." *Id*. at 89. The ALJ further noted that the records indicated Iwan was "doing very well" with treatment and had "an easier time with mobility and easier time going up and down stairs." *Id*. The ALJ also pointed out that Iwan had "improvement with her range of motion." *Id*. The ALJ addressed similar records dealing with treatment to Iwan's left knee which resulted in "decreased pain and improved mobility" and an ability "to ambulate functional distances independently." *Id*. Similarly, the ALJ pointed out that, in April 2016, treatment to Iwan's left knee resulted in Iwan "doing very well." *Id*. at 90. Even though the ALJ did not explicitly address Dr. Mathew's treatment notes while weighing Dr. Mathew's opinions, the ALJ implicitly found Dr. Mathew's treatment notes to be inconsistent with the extreme limitations found in his checkbox medical source statement. *See McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011) (upholding an ALJ's implicit finding because it was supported by substantial evidence); *Hogan*, 239 F.3d at 961 (providing that an ALJ may discount a treating source opinion "if the treating physician has offered inconsistent opinions").

Having reviewed the entire record, the court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Mathew. The ALJ justifiably discounted Dr. Mathew's opinions because it was "inconsistent or contrary to the medical evidence as a whole." *Aguiniga v. Colvin*, 833 F.3d 896, 901 (8th Cir. 2016) (quoting *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011)). While the ALJ could have better articulated his reasons for affording Dr. Mathew's opinions "little weight," "[a]n arguable deficiency in opinion writing that had no practical effect on the decision . . . is not a sufficient reason to set aside the ALJ's decision." *Hensley v. Colvin*, 829 F.3d 926, 932

(8th Cir. 2016) (second alteration in original) (quoting *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014)). Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court shall overrule this objection.

## V. SUPPLEMENTAL BRIEF

In the Supplemental Brief, Iwan contends that the ALJ that decided Iwan's claim "was an inferior officer not appointed in a constitutional manner" and, therefore, the ALJ's decision must be vacated and the case must be remanded to be decided by a properly appointed ALJ. Supplemental Brief at 1-2. Iwan relies on *Lucia v. S.E.C.*, ___ U.S. ___, 138 S. Ct. 2044 (2018), which held that ALJs for the Securities and Exchange Commission are "Officers of the United States," and therefore, are subject to the Appointments Clause. 138 S. Ct. at 2055.

In *Lucia*, the Supreme Court stated that "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Id*. at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182-83 (1995)). The Supreme Court further stated the plaintiff had "made just such a timely challenge: He contested the validity of [the presiding ALJ's] appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court." *Id*. Unlike the plaintiff in *Lucia*, Iwan did not contest the validity of the Social Security Administration ALJ who decided her case at the agency level. The record clearly demonstrates that Iwan did not raise her Appointments Clause argument before either the ALJ or the Appeals Council. Rather, Iwan raised this issue for the first time to this court on judicial review, after Judge Mahoney had issued the Report and Recommendation. Because Iwan did not raise her Appointments Clause challenge before the ALJ or Appeals Council, the court finds that she has waived this issue. *See N.L.R.B. v. RELCO Locomotives, Inc.*, 734 F.3d

764, 798 (8th Cir. 2013) (concluding that a plaintiff who raised an Appointments Clause challenge "waived its challenge to the Board's composition because it did not raise the issue before the Board"); *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (finding that a claimant's failure to raise a disability claim during the administrative process "waived [the claim] from being raised on appeal"); *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) ("[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." (quoting *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999))); *Trejo v. Berryhill*, No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018) ("To the extent *Lucia* applies to Social Security ALJs, [the] [p]laintiff has forfeited the issue by failing to raise it during her administrative proceedings.").

Iwan asserts that "[i]t should be noted that *Sims v. Apfel*, [530 U.S. 103 (2000)] controls concerning the potential waiver issue . . . for parties wishing to raise Appointments Clause issues for the first time in federal court, as there is no waiver of issues by claimants for failing to present them to the Appeals Council." Supplemental Brief at 6. Iwan's argument is without merit. The Ninth Circuit Court of Appeals addressed a similar argument and explained that "*Sims* concerned only whether a claimant must present all relevant issues *to the Appeals Council* to preserve them for judicial review; the [Supreme] Court specifically noted that '[w]hether a claimant must exhaust issues before the ALJ is not before us.'" *Shaibi*, 883 F.3d at 1109 (second alteration in original) (quoting *Sims*, 530 U.S. at 107). Here, Iwan did not present her Appointments Clause challenge to the ALJ *or* the Appeals Council. Thus, the Eighth Circuit's finding in *Anderson*, that a claimant's failure to raise an issue during the administrative process waives the claim from being raised on appeal, is not affected by the holding in *Sims*. *See* 344 F.3d at 814. The court concludes that Iwan's Appointments Clause argument is waived.

## VI.  CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1)   The Objections (docket no. 25) are **OVERRULED**;

(2)   The Report and Recommendation (docket no. 17) is **ADOPTED** and the final decision of the Commissioner is **AFFIRMED**; and

(3)   The Complaint (docket no. 3) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**DATED** this 10th day of September, 2018.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA